**SEALED**

**FILED**

APR 1 9 2022

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. ~~22 CR 115 CVE~~ |
| Plaintiff, | FILED UNDER SEAL |
| v. | INDICTMENT |
| RICHARD DALE DEETER, JR.,<br>DONALD B. PEARSON,<br>JONNA ELISA STEELE,<br>JOHNNY WESLEY SPARKS,<br>a/k/a "J5,"<br>IZABELLA MARIE BOLING,<br>a/k/a "Turbo,"<br>NICOLE COX,<br>a/k/a "Nicole Michelle Jenner,"<br>a/k/a "Nicole Michelle Cox,"<br>a/k/a "Nicole Patterson," | [COUNT ONE – 21 U.S.C.<br>§§ 848(a) and 848(c) – Continuing<br>Criminal Enterprise;<br>COUNTS TWO AND THREE: 18<br>U.S.C. §§ 922(g)(1), 924(a)(2), and 2<br>– Felon in Possession of a Firearm;<br>COUNT FOUR: 18 U.S.C.<br>§§ 922(g)(1) and 924(a)(2) – Felon in<br>Possession of a Firearm and<br>Ammunition;<br>COUNT FIVE: 18 U.S.C. § 924(o) –<br>Firearms Conspiracy;<br>COUNT SIX: 21 U.S.C. §§ 846 and<br>841(b)(1)(A)(viii) – Drug<br>Conspiracy; |
| Defendants. | COUNTS SEVEN through<br>THIRTY-NINE: 21 U.S.C. §§<br>843(b) and 843(d)(1) – Use of a<br>Communication Facility in<br>Committing, Causing, and<br>Facilitating the Commission of<br>a Drug Trafficking Felony;<br>COUNTS FORTY and FORTY-<br>TWO: 18 U.S.C. §§ 924(c)(1)(A)(i)<br>and 2 – Possession of a Firearm in<br>Furtherance of a Drug Trafficking<br>Crime;<br>COUNT FORTY-ONE: 21 U.S.C.<br>§§ 841(a)(l) and 84l(b)(l)(A)(viii) –<br>Possession of Methamphetamine<br>with Intent to Distribute;<br>COUNT FORTY-THREE: 21<br>U.S.C. §§ 856(a)(1) and 856(b) – |

Maintaining a Drug-Involved Premises;
Forfeiture Allegation: 18 U.S.C. § 924(d), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c) – Drug and Firearms Forfeiture]

**THE GRAND JURY CHARGES:**

**COUNT ONE**
**[21 U.S.C. §§ 848(a) and 848(c)]**

From at least January 2021, the exact date being unknown to the Grand Jury, and continuing through and including the date of this Indictment, within the Northern District of Oklahoma, and elsewhere, the defendant, **RICHARD DALE DEETER, JR.**, did knowingly and intentionally engage in a Continuing Criminal Enterprise in that he knowingly and intentionally violated Title 21, United States Code, Sections 841(a)(1) and 846, which violations include, but are not limited to, those substantive violations alleged in Count Six of this Indictment, Drug Conspiracy, a violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(viii).

The above listed violations are realleged and incorporated herein as though fully set fort in this count, and which violations were part of a continuing series of violations of the Controlled Substances Act, Title 21, United States Code, Section 801, et seq., undertaken by **DEETER** in concert with at least five other persons with respect to whom **DEETER** occupied a position of organizer, supervisor, and any

position of management, and from which such continuing series of violations the defendant obtained substantial income and resources.

Furthermore, **DEETER** was a principal administrator, organizer, supervisor, and leader of this Continuing Criminal Enterprise, which involved the substantive violations of possession with intent to distribute and distribution of mixtures and substances containing detectable amounts of methamphetamine, a Schedule II controlled substance, violations of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Sections 848(a) and 848(c).

## COUNT TWO
## [18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2]

On or about July 29, 2021, in the Northern District of Oklahoma, the defendant,

**RICHARD DALE DEETER, JR.**, aided and abetted by a person known to the

Grand Jury as Unindicted Co-Conspirator 1, and knowing he had previously been

convicted of the following crimes punishable by imprisonment for terms exceeding

one year:

1.     Possession of a Controlled Substance, Case No. CF-2012-4656, in the District Court of Tulsa County, State of Oklahoma, on December 3, 2012;

2.     Possession of a Controlled Substance, Case No. CF-2016-209, in the District Court of Tulsa County, State of Oklahoma, on February 19, 2016;

3.     Possession of a Firearm After Former Conviction of a Felony, Case No. CF-2015-5614, in the District Court of Tulsa County, State of Oklahoma, on February 19, 2016;

4.     Possession of a Controlled Substance, Case No. CF-2015-3809, in the District Court of Tulsa County, State of Oklahoma, on February 19, 2016;

5.     Possession of Stolen Vehicle, Case No. CF-2015-2259, in the District Court of Tulsa County, State of Oklahoma, on February 19, 2016;

6.     Trafficking in Illegal Drugs, Count One, Case No. CF- 2017-2798, in the District Court of Tulsa County, State of Oklahoma, on August 15, 2017;

7.     Possession of a Firearm After Former Conviction of a Felony, Count Two, Case No. CF- 2017-2798, in the District Court of Tulsa County, State of Oklahoma, on August 15, 2017, and

8.     Possession of a Firearm After Former Conviction of a Felony, Case No. CF-2017-2317, in the District Court of Tulsa County, State of Oklahoma, on August 15, 2017,

4

knowingly possessed in and affecting interstate commerce a firearm, that is, a Lorcin, Model L380, .380 caliber pistol, serial number 321453.

All in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 2.

## COUNT THREE
### [18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2]

On or about December 29, 2021, in the Northern District of Oklahoma, the

defendant, **RICHARD DALE DEETER, JR.**, aided and abetted by a person known

to the Grand Jury as Unindicted Co-Conspirator 3, and knowing he had previously

been convicted of crimes punishable by imprisonment for terms exceeding one year,

as set forth more fully in Count Two of this Indictment, knowingly possessed in and

affecting interstate commerce the following firearms:

      1.     A Bryco Arms (Jennings), Bryco 59, 9mm semiautomatic pistol, serial number 788822; and

      2.     A Companhia Brasileira de Cartuchos (CBC), SB, 12-gauge caliber break open shotgun, serial number C7296473.

All in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and

2.

## COUNT FOUR
### [18 U.S.C. §§ 922(g)(1) and 924(a)(2)]

On or about November 23, 2021, in the Northern District of Oklahoma, the

defendant, **DONALD B. PEARSON**, knowing he had previously been convicted of

the following crimes punishable by imprisonment for terms exceeding one year:

1.    Possession of a Controlled Substance Within 1,000 Feet of a School, Case No. CF-2004-1046, in the District Court of Tulsa County, State of Oklahoma, on April 21, 2004;

2.    Possession of a Firearm After Former Conviction of a Felony (Count One), Case No. CF-2015-396, in the District Court of Tulsa County, State of Oklahoma, on February 24, 2015;

3.    Unlawful Possession of Controlled Drug – Methamphetamine (Count Two), Case No. CF-2015-396, in the District Court of Tulsa County, State of Oklahoma, on February 24, 2015;

4.    DUI Alcohol - Second Offense, Case No. CF-2015-3217, in the District Court of Tulsa County, State of Oklahoma, on September 10, 2015;

5.    Receiving / Possessing / Concealing Stolen Vehicle, Case No. CF-2017-5686, in the District Court of Tulsa County, State of Oklahoma, on November 9, 2017;

6.    Identity Theft (Count One), Case No. CF-2019-4965, in the District Court of Tulsa County, State of Oklahoma, on November 15, 2019;

7.    False Personation (Count Two), Case No. CF-2019-4965, in the District Court of Tulsa County, State of Oklahoma, on November 15, 2019;

8.    Possessing / Receiving / Concealing Stolen Property (Count Three), Case No. CF-2019-4965, in the District Court of Tulsa County, State of Oklahoma, on November 15, 2019;

9.    Larceny of Automobile, Case No. CF-2019-1139, in the District Court of Tulsa County, State of Oklahoma, on December 17, 2019;

10.    Possession of Stolen Vehicle (Count One), Case No. CF-2019-1169, in the District Court of Tulsa County, State of Oklahoma, on December 17, 2019;

11.   Possession of Controlled Drug – Methamphetamine (Count Two), Case No. CF-2019-1169, in the District Court of Tulsa County, State of Oklahoma, on December 17, 2019;

12.   False Declaration of Ownership in Pawn (Count One), Case No. CF-2019-1634, in the District Court of Tulsa County, State of Oklahoma, on December 17, 2019;

13.   Larceny from the House (Count Two), Case No. CF-2019-1634, in the District Court of Tulsa County, State of Oklahoma, on December 17, 2019;

14.   Conspiracy to Commit a Felony (Count One), Case No. CF-2019-1710, in the District Court of Tulsa County, State of Oklahoma, on December 17, 2019;

15.   Taking/Receiving Stolen Credit/Debit Card (Counts Two through Seven), Case No. CF-2019-1710, in the District Court of Tulsa County, State of Oklahoma, on December 17, 2019;

knowingly possessed in and affecting interstate commerce the following firearm and

ammunition:

1.   A Glock 43X, 9x19 caliber semi-automatic pistol, serial number BMUB511; and

2.   Ten rounds of Hornady branded 9 mm caliber ammunition.

All in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

## COUNT FIVE
### [18 U.S.C. § 924(o)]

From at least July 2021, the exact date being unknown to the Grand Jury, and continuing through and including the date of this Indictment, in the Northern District of Oklahoma, the defendants, **RICHARD DALE DEETER, JR., DONALD B. PEARSON, JONNA ELISA STEELE, IZABELLA MARIE BOLING**, a/k/a "Turbo," and **NICOLE COX**, a/k/a "Nicole Michelle Jenner," a/k/a "Nicole Michelle Cox," a/k/a "Nicole Patterson," knowingly and intentionally combined, conspired, confederated, and agreed with other persons, both known and unknown to the Grand Jury (collectively "the **CONSPIRATORS**"), to commit offenses against the United States, in violation of Title 18, United States Code, Section 924(o), as follows:

### OBJECTS OF THE CONSPIRACY

The objects of the Conspiracy were:

1.   To possess firearms during and in relation to a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c); and

2.   To possess firearms in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).

### MANNER AND MEANS OF THE CONSPIRACY

The Conspiracy was to be accomplished, and was accomplished, by the following manner and means:

1.   The **CONSPIRATORS** would and did obtain firearms.

3.     The **CONSPIRATORS** would and did possess firearms in furtherance of drug trafficking crimes, in that they would and did trade methamphetamine as payment in exchange for firearms.

4.     The **CONSPIRATORS** would and did use cellular telephones, including video calls, text messaging, and other communication methods, to obtain and sell firearms.

5.     The **CONSPIRATORS** would and did communicate by Facebook messenger to obtain and sell firearms.

6.     The **CONSPIRATORS** stored methamphetamine and firearms at 1815 North Atlanta Place, in Tulsa, Oklahoma.

7.     The **CONSPIRATORS** would and did distribute methamphetamine in the Northern District of Oklahoma.

## OVERT ACTS

In furtherance of the Conspiracy, the **CONSPIRATORS** committed, in the Northern District of Oklahoma and elsewhere, one or more of the following acts:

1.     On or about July 5, 2021, **DEETER** directed a person known to the Grand Jury as Unindicted Co-Conspirator 1 (UCC 1) to purchase a Lorcin, Model L380, .380 caliber pistol with money obtained from the distribution of methamphetamine.

2.     On or about July 29, 2021, UCC 1 possessed the above Lorcin .380 caliber pistol at 4536 South Xenophon Avenue, in Tulsa, Oklahoma.

3.    In approximately July 2021, **COX** stayed in a hotel and **DEETER** directed her to leave drugs and a firearm in the hotel.

4.    In approximately July 2021, after receiving **DEETER's** directions, **COX** took the drugs but left the firearm in the hotel.

5.    In approximately July 2021, after **COX** left the firearm in the hotel at **DEETER's** directions, a person known to the Grand Jury as UCC 2 went to the hotel and took the firearm at **DEETER's** directions.

6.    In approximately July 2021, **DEETER** directed UCC 2 to deliver this firearm to **STEELE**.

7.    In approximately July 2021, UCC 2 delivered this firearm to **STEELE**.

8.    Between approximately July and August of 2021, UCC 2 purchased a pistol and kept it in UCC 2's house at **DEETER's** directions.

9.    Between approximately July and August of 2021, **DEETER** directed UCC 2 to deliver this firearm to **PEARSON**.

10.    Between approximately July and August of 2021, but before delivering the pistol to **PEARSON**, UCC 2 removed the firing pin.

11.    Between approximately July and August of 2021, **DEETER** had a telephonic conversation with UCC 2 about this pistol and the missing firing pin.

12.    Between approximately July and August of 2021, after the telephone conversation above, UCC 2 gave the firing pin to **PEARSON**.

13.   In approximately September 2021, **BOLING** moved into a house at 1815 North Atlanta Place, Tulsa, Oklahoma.

14.   Over the several weeks after moving into the house described above, **BOLING** used the location to store firearms and sell methamphetamine for **DEETER**.

15.   On or about October 7, 2021, **DEETER** sent a message over Facebook Messenger to an unknown individual saying, "Yes....Jason is on some crazy shit or something. He has my guns and owes me money but won't answer or call me... I have info about some dudes running up inq his shit bit he won't talk to me.doe me to give him a heads up so".

16.   On or about November 5, 2021, **DEETER** asked **BOLING** to help him sell approximately 13 firearms over Facebook Messenger for a total price of $5,000.

17.   From approximately November 2021 to December 29, 2021, **DEETER** directed a person known to the Grand Jury as UCC 3 to store firearms at 1815 North Atlanta Place, in Tulsa, Oklahoma.

18.   From approximately November 2021 to December 29, 2021, **DEETER** contacted UCC 3 over cellular telephone, including video calls, and directed UCC 3 to trade methamphetamine for firearms.

19.   From approximately November 2021 to December 29, 2021, UCC 3 traded methamphetamine for firearms at **DEETER's** directions.

20. From approximately November 2021 to December 29, 2021, UCC 3 used money obtained from selling the firearms described above to purchase additional methamphetamine.

21. From approximately November 2021 to on or about December 29, 2021, **DEETER** contacted UCC 3 over cellular telephone, including video calls, and directed UCC 3 to give various firearms to members of the UAB.

22. In approximately December 2021, **DEETER** arranged for a person to deliver a Glock 19, 9x19 caliber semiautomatic pistol to 1815 North Atlanta Place, in Tulsa, Oklahoma.

23. In approximately December 2021, **DEETER** directed UCC 3 to pay for the pistol described above with methamphetamine.

24. In approximately December 2021, **DEETER** arranged for a person to deliver a Bryco Arms (Jennings), Bryco 59, 9mm semiautomatic pistol, serial number 788822, to 1815 North Atlanta Place, in Tulsa, Oklahoma.

25. In approximately December 2021, the person described above delivered the pistol described above to UCC 3 as payment for a drug debt owed to **DEETER**.

26. In approximately December 2021, **DEETER** arranged for a UAB member to deliver a Companhia Brasileira de Cartuchos (CBC), SB, 12-gauge caliber break open shotgun, serial number C7296473, to 1815 North Atlanta Place, in Tulsa, Oklahoma, to hide the firearm from police.

27.    On or about December 29, 2021, UCC 3 possessed a Ruger .22-250 caliber bolt action rifle, a Glock 19, 9x19 caliber semiautomatic pistol, a Bryco Arms 9mm semiautomatic pistol, and a Companhia Brasileira de Cartuchos  12-gauge caliber break open shotgun.

All in violation of Title 18, United States Code, Section 924(o).

## COUNT SIX
## [21 U.S.C. §§ 846 and 841(b)(1)(A)(viii)]

From at least January 2021, the exact date being unknown to the Grand Jury, and continuing through and including the date of this Indictment, in the Northern District of Oklahoma, the defendants, **RICHARD DALE DEETER, JR., DONALD B. PEARSON, JONNA ELISA STEELE, JOHNNY WESLEY SPARKS**, a/k/a "J5," **IZABELLA MARIE BOLING**, a/k/a "Turbo," **NICOLE COX**, a/k/a "Nicole Michelle Jenner," a/k/a "Nicole Michelle Cox," a/k/a "Nicole Patterson,"  together and with others known and unknown to the Grand Jury (collectively "the **CONSPIRATORS**"), willfully, knowingly, and intentionally combined, conspired, confederated, and agreed, each with the other, to commit offenses against the United States as follows:

### OBJECTS OF THE CONSPIRACY

The objects of the Conspiracy were:

1.    To possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, a violation of Title 21, United States Code, Section 841(a)(l); and

2.    To distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, a violation of Title 21, United States Code, Section 841(a)(l).

15

## PURPOSE OF THE CONSPIRACY

The purpose of the conspiracy was to enrich the **CONSPIRATORS** illegally through the illicit sale of methamphetamine to addicts and redistributors who had no lawful means of acquiring the controlled substance.

## MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were accomplished by the following means and methods, among others:

1.	**DEETER** would and did coordinate the distribution of methamphetamine in the Northern District of Oklahoma while incarcerated in the Oklahoma Department of Corrections.

2.	**DEETER** would and did coordinate couriers to pick up bulk quantities of methamphetamine in Oklahoma City, Oklahoma, and to deliver to Tulsa, Oklahoma, to be re-distributed.

3. The **CONSPIRATORS** would and did use Tulsa, Oklahoma, to operate a local cell for the distribution of methamphetamine.

3.	**DEETER** would and did use contraband cellular telephones to communicate with co-conspirators while **DEETER** was in the Oklahoma Department of Corrections.

4.	**DEETER** would and did coordinate the delivery of money to the source of supply as payment for methamphetamine.

16

5.      The **CONSPIRATORS** would and did use vehicles to transport methamphetamine and to distribute methamphetamine in the Northern District of Oklahoma.

6.      The **CONSPIRATORS** would and did obtain bulk quantities of methamphetamine for re-distribution within the Northern District of Oklahoma.

7.      The **CONSPIRATORS** would and did operate and use houses, including 1815 North Atlanta Place, Tulsa, Oklahoma, and other places in the Northern District of Oklahoma for the processing and distribution of methamphetamine in the Northern District of Oklahoma.

8.      The **CONSPIRATORS** would and did use cellular telephones, including video calls, text messaging and other communication methods to distribute controlled substances.

9.      The **CONSPIRATORS** would and did use Facebook Messenger to distribute controlled substances.

10.      The **CONSPIRATORS** would and did use an encrypted instant messaging service to distribute controlled substances while avoiding law enforcement detection of their activity.

11.      **DEETER** would and did send messages on Facebook Messenger of a list of people who owed him money.

12.      **DEETER** would and did send messages on Facebook Messenger containing his account balance sheet.

13. **DEETER** would and did accept payment from co-conspirators and drug customers over Cash App.

14. **DEETER** would and did accept payment from co-conspirators and drug customers through the use of Green Dot cards.

15. **DEETER** would and did use a Wells Fargo bank account to store profits from drug trafficking.

16. The **CONSPIRATORS** would and did use the threats of violence and actual violence in an effort to collect money owed from the purchase of methamphetamine.

17. The **CONSPIRATORS** would and did possess firearms in furtherance of drug trafficking, in that the **CONSPIRATORS** would and did trade methamphetamine as payment in exchange for firearms.

18. **DEETER** would and did arrange to post bond for members of the conspiracy if they were arrested.

19. During the course of the conspiracy, the **CONSPIRATORS** would and did generate income from the distribution of methamphetamine.

**OVERT ACTS**

In furtherance of the Conspiracy, the **CONSPIRATORS** committed, in the Northern District of Oklahoma and elsewhere, one or more of the following acts:

1.    From approximately January 2021 to approximately March 2021, **DEETER** arranged for a person known to the Grand Jury as Unindicted Co-Conspirator 3 (UCC 3) to purchase ounces of methamphetamine from **STEELE**.

2.    From approximately March 2021 to approximately August 2021, **DEETER** arranged for UCC 3 to purchase multi-ounce quantities of methamphetamine from **PEARSON** and a person known to the Grand Jury as UCC 4.

3.    From approximately March 2021 to approximately August 2021, **DEETER** sent customers to UCC 3's house to purchase methamphetamine from UCC 3.

4.    From approximately March 2021 to approximately August 2021, UCC 3 delivered to **PEARSON** and UCC 4 money from the sale of methamphetamine.

5.    From approximately January 2021 to December 29, 2021, **DEETER** accepted payment via Green Dot card from UCC 3 for the methamphetamine supplied by **DEETER**.

6.    From approximately January 2021 to December 29, 2021, **DEETER** accepted payment via Cash App from UCC 3 for the methamphetamine **DEETER** supplied to UCC 3.

7.    From approximately late March 2021 to May 2021, **DEETER** directed UCC 2 to pick up kilogram amounts of methamphetamine from **SPARKS**.

8.    In June 2021, **DEETER** directed UCC 2 to travel to Oklahoma City to purchase approximately five to seven kilograms of methamphetamine.

9.    In June 2021, UCC 2 made this trip to Oklahoma City and purchased methamphetamine as **DEETER** directed.

10.   On or about June 19, 2021, **DEETER** and UCC 1 had a text message discussion about UCC 1 selling methamphetamine for **DEETER**.

11.   On or about June 24, 2021, **DEETER** had a text message conversation in which he directed UCC 1 to pick up methamphetamine from **STEELE** for redistribution.

12.   Between approximately June to July of 2021, an individual owing $2,700 to **DEETER** for drugs had a friend deliver a Chevy Tahoe to UCC 2's house as payment for this debt.

13.   Between approximately July to August of 2021, **PEARSON, COX**, and several other people unknown to the Grand Jury came to UCC 2's house and took possession of the Chevy Tahoe described above.

14.   On or about June 30, 2021, **DEETER** and UCC 1 had a text message discussion about UCC 1 selling methamphetamine for **DEETER**.

15.   At approximately the end of June or early July of 2021, **DEETER** directed UCC 2 to travel to Oklahoma City to purchase approximately five to seven kilograms of methamphetamine.

16. At approximately the end of June or early July of 2021, UCC 2 made this trip to Oklahoma City and purchased methamphetamine as **DEETER** directed.

17. On or about July 2, 2021, **DEETER** sent UCC 1 a text message about their drug trafficking "partnership."

18. On or about July 2, 2021, **DEETER** arranged through text message conversation for UCC 1 to pick up methamphetamine from **STEELE** for redistribution.

19. On or about July 5, 2021, **DEETER** directed UCC 1 to purchase a Lorcin, Model L380, .380 caliber pistol with money obtained from the distribution of methamphetamine.

20. On or about July 5, 2021, **DEETER** directed UCC 1 to help him find someone to shave the heads and eyebrows of two women who owed him money.

21. On or about July 11, 2021, **DEETER** arranged through text message conversation for UCC 1 to pick up methamphetamine from **STEELE** for redistribution.

22. On or about July 26, 2021, **DEETER** directed UCC 1 to "get as much money as possible" because **DEETER** needed to pay his methamphetamine source of supply.

23. On or about July 29, 2021, **DEETER** directed UCC 2 to travel to Oklahoma City to purchase approximately fourteen kilograms of methamphetamine.

24.   On or about July 29, 2021, UCC 2 made this trip to Oklahoma City and purchased methamphetamine as **DEETER** directed.

25.   From approximately May to July 2021, **COX** made multiple trips to Oklahoma City, Oklahoma, to pick up bulk-quantities of methamphetamine for **DEETER.**

26.   From approximately May to July 2021, **COX** distributed methamphetamine for **DEETER** from a hotel room in Tulsa, Oklahoma.

27.   On or about August 25, 2021, over Facebook Messenger, **DEETER** directed **STEELE** to use Cash App to pay **DEETER** for methamphetamine to be redistributed.

28.   On or about August 29, 2021, over Facebook Messenger, **DEETER** and **COX** discussed **DEETER** owing money to his methamphetamine source of supply.

29.   On or about September 1, 2021, over Facebook Messenger, **DEETER** and **STEELE** discussed methamphetamine prices.

30.   On or about September 1, 2021, over Facebook Messenger, **DEETER** discussed with an unknown individual that **BOLING** was in jail and that **DEETER** was "working on her bond now."

31.   On or about September 3, 2021, **DEETER** directed a customer over Facebook Messenger to contact **PEARSON** to purchase methamphetamine.

32.   On or about September 9, 2021, UCC 2 possessed approximately 473 grams of methamphetamine at 1002 North Oswego Avenue, in Tulsa, Oklahoma.

33. In approximately September 2021, **DEETER** agreed to pay the rent for **BOLING** if UCC 3 allowed **BOLING** to live at 1815 North Atlanta Place, in Tulsa, Oklahoma.

34. In approximately September 2021, **BOLING** moved into UCC 3's house at 1815 North Atlanta Place, in Tulsa, Oklahoma.

35. From approximately September 2021 to October 2021, **DEETER** paid **BOLING's** rent to UCC 3 in the form of counterfeit oxycodone pills (made with fentanyl).

36. From approximately September 2021 to October 2021, **BOLING** used 1815 North Atlanta Place, in Tulsa, Oklahoma, to distribute methamphetamine for **DEETER**.

37. From approximately September 2021 to October 2021, **BOLING** used 1815 North Atlanta Place, in Tulsa, Oklahoma, to store **DEETER's** firearms.

38. From approximately September 2021 to October 2021, **BOLING** used 1815 North Atlanta Place, in Tulsa, Oklahoma, to store **DEETER's** money from the sale of methamphetamine.

39. From approximately September 2021 to October 2021, UCC 3 purchased methamphetamine from **BOLING** for redistribution.

40. On or about October 1, 2021, **DEETER** posted a message on **BOLING'S** Facebook page stating, "I count the money, you count it too…You're a reflection of me shawty…"

41.   On or about October 8, 2021, **DEETER** sent a message over Facebook Messenger to an unknown individual quoting a price for an ounce of methamphetamine and a quarter pound of methamphetamine.

42.   On or about October 8, 2021, **DEETER** sent a message over Facebook Messenger to an unknown individual quoting a price for an ounce of methamphetamine and a quarter pound of methamphetamine in Tulsa.

43.   On or about October 8, 2021, **DEETER** sent a message over Facebook Messenger to an unknown individual in which he said, "Need to put as my h money as possible together asap" and then quoted a cash price for a quarter pound of methamphetamine and an ounce of methamphetamine.

44.   On about October 8, 2021, **DEETER** sent a message over Facebook Messenger to an unknown individual quoting a price for an ounce of methamphetamine and a quarter pound of methamphetamine.

45.   On or about October 8, 2021, **DEETER** sent a message over Facebook Messenger to an unknown individual quoting a price for a quarter pound of methamphetamine.

46.   On or about October 8, 2021, **DEETER** sent a message over Facebook Messenger to an unknown individual stating, "I need 12 racks by 5:00."

47.   On or about October 10, 2021, **DEETER** sent a message over Facebook Messenger to an unknown individual stating, "My ex got raided and I guess she sold to a CI that told the DEA that my girl was being supplied by a UAB in prison and

24

they had her under investigation for 3 months before the raid. Found a kilo of meth 1000 xanax 2 pistols small amount of herion and cash ...her and a brother were in the house ... nobody went to jail or was charged with anything...."

48.   On or about October 11, 2021, **DEETER** sent a message to **STEELE** over Facebook Messenger stating, "No....I just need everyone to come together and start working together more without me having to direct everything....Im exhausted my man, don't think I can hold everything together much longer by myself."

49.   On or about October 18, 2021, **DEETER** arranged for UCC 3 to pick up methamphetamine from **PEARSON** for redistribution.

50.   In approximately October 2021, UCC 3 stole firearms, methamphetamine, and money belonging to **DEETER** from UCC 3's house at 1815 North Atlanta Place, in Tulsa, Oklahoma.

51.   In approximately October 2021, after the above theft, **PEARSON** and two other unindicted co-conspirators with **DEETER** on a video call confronted UCC 3 about this theft.

52.   In approximately October 2021, **DEETER** made UCC 3 return the stolen firearms, money, and methamphetamine described above.

53.   In approximately October 2021, **DEETER** directed UCC 3 to continue selling the methamphetamine for **DEETER**.

54.   On or about October 1, 2021, **COX** possessed methamphetamine in the vicinity of Tontitown, Arkansas.

55.   On or about November 17, 2021, **DEETER** had a telephonic conversation with UCC 2 in which he asked UCC 2 to find someone who could pilot a drone for the purposes of smuggling contraband into prison.

56.   On or about November 23, 2021, **PEARSON** attempted to elude law enforcement and avoid apprehension while driving a white 2005 Ford F250 in the vicinity of 1600 North Lewis Place, in Tulsa, Oklahoma.

57.   On November 23, 2021, **PEARSON**, had a telephonic conversation with UCC 4 in which **PEARSON** told UCC 4 to call **DEETER** and tell **DEETER** to remove **PEARSON** from a Signal group chat.

58.   On November 23, 2021, **PEARSON** further told UCC 4 in the telephonic conversation described above to see if **DEETER** could post **PEARSON'S** bond and get **PEARSON** out of jail.

59.   On November 23, 2021, **PEARSON** instructed UCC 4 in the same telephonic conversation to log into his cellphone remotely and delete its contents in an attempt to defeat potential law enforcement recovery of evidence from the cellphone.

60.   From approximately November 2021 to December 29, 2021, **DEETER** directed UCC 3 to meet with a source of methamphetamine supply in Tulsa, Oklahoma.

61. In the beginning, **DEETER** directed UCC 3 to meet the source of supply in the vicinity of East 51st Street and South Memorial Drive in Tulsa, Oklahoma, to pick up methamphetamine.

62. At a later point, **DEETER** directed the source of supply to go to UCC 3's home at 1815 North Atlanta Place, in Tulsa, Oklahoma, to drop off methamphetamine.

63. During this time period, UCC 3 would pay the source of supply in cash or send money to **DEETER** using Green Dot cards.

64. From approximately November 2021 to December 29, 2021, **DEETER** instructed UCC 3 about the number of methamphetamine packages to prepare from what UCC 3 obtained, to whom to distribute these packages, and for what price.

65. From approximately November 2021 to December 29, 2021, **DEETER** arranged for customers to come to UCC 3's house at 1815 North Atlanta Place, in Tulsa, Oklahoma, to purchase methamphetamine.

66. From approximately November 2021 to December 29, 2021, **DEETER** supplied UCC 3 with methamphetamine for distribution.

67. From approximately November 2021 to December 29, 2021, **DEETER** directed UCC 3 to trade methamphetamine for firearms.

68. From approximately November 2021 to December 29, 2021, UCC 3 traded methamphetamine for firearms as **DEETER** directed.

69. On or about December 2, 2021, **SPARKS** possessed approximately 1,470 grams of methamphetamine at 1831 North Atlanta Avenue, in Tulsa, Oklahoma.

70. In approximately early December 2021, **DEETER** asked UCC 3 to steal a Ford Mustang belonging to Michael Johnson because Johnson had not paid a drug debt owed to **DEETER**.

71. On or about December 17, 2021, **DEETER** directed UCC 3 to go to UCC 4's apartment and "just fuck everything and everyone up" because **DEETER** believed UCC 4 had stolen from him.

72. On or about December 18, 2021, UCC 3 posted a message on Facebook that said, "F*cking pissed at the world today!!!!!! Gonna make MF's pay!!! I don't give a sh*t WTF!!! If you owe me or Richard Rich Deeter you better come up with something! I don't give a shit if you going to sell your mam!! Cuz I have nothing and am without because of you b**** ass n*****! And I'm coming hunting!"

73. On or about December 19, 2021, **DEETER** sent a text message to UCC 3 with a list of "dead beats" who owed **DEETER** money.

74. On or about December 19, 2021, in the text message list of "dead beats," **DEETER** put Michael Johnson first on this list and stated that Johnson owed $6,520 and owned a Mustang worth "$8k."

75. On or about December 21, 2021, **DEETER** sent a message over Facebook Messenger to an unknown individual saying he had "workers in Tulsa."

76.   On or about December 21, 2021, **DEETER** sent to an unknown individual over Facebook Messenger a message stating, "I have lost over 60k in 120 days bro. It's getting hard to keep up.....I owe 38k now."

77.   On or about December 21, 2021, **DEETER** sent to an unknown individual over Facebook Messenger a list of people who owed money to **DEETER**, with Michael Johnson named as the first person on the list.

78.   On or about December 21, 2021, **DEETER** sent an unknown individual a list of quantities of drugs, names, and amounts of money over Facebook Messenger.

79.   On or about December 21, 2021, **DEETER** sent an unknown individual a balance sheet containing names and amounts of money over Facebook Messenger.

80.   On or about December 21, 2021, **DEETER** sent an unknown individual a list of names and amounts of money owed to **DEETER** over Facebook Messenger.

81.   On or about December 29, 2021, UCC 3 possessed over 2,000 grams of methamphetamine at 1831 North Atlanta Avenue, in Tulsa, Oklahoma.

82.   On or about January 2, 2022, **DEETER** told an unknown individual over Facebook Messenger that the "Feds hit" two locations **DEETER** was using for drug trafficking.

83.   On or about January 2, 2022, **DEETER** offered to sell bulk-quantities of methamphetamine to an unknown individual over Facebook Messenger.

84.   On or about January 5, 2022, a person known to the Grand Jury as UCC 5 attempted to collect a drug debt owed to **DEETER** by stealing a car from Michael Johnson at 41 North Florence Avenue, Tulsa, Oklahoma.

85.   On or about January 5, 2022, UCC 5 shot and killed Michael Johnson at 41 North Florence Avenue, in Tulsa, Oklahoma, while attempting to collect a drug debt owed to **DEETER**.

All in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A)(viii).

## COUNTS SEVEN through THIRTY-NINE
## [21 U.S.C. §§ 843(b) and 843(d)(1)]

On or about the dates listed below, in the Northern District of Oklahoma and elsewhere, the defendants, **RICHARD DALE DEETER, JR., DONALD B. PEARSON, JONNA ELISA STEELE, NICOLE COX,** a/k/a "Nicole Michelle Jenner," a/k/a "Nicole Michelle Cox," a/k/a "Nicole Patterson," and others known and unknown to the Grand Jury, knowingly and intentionally used a communication facility, that is, a telephone (cellular or otherwise), in committing, causing, and facilitating the commission of acts constituting felonies under Title 21, United States Code, Sections 841 and 846, in that the defendants used the telephones to discuss various matters concerning the conspiracy to possess with intent to distribute and to distribute Methamphetamine, a Schedule II controlled substance, as set forth in the chart below:

| COUNT | DATE | DEFENDANTS | DESCRIPTION |
|-------|------|------------|-------------|
| 7 | June 19, 2021 | **DEETER** | **DEETER** and UCC 1 had a text message discussion about UCC 1 selling methamphetamine for **DEETER** |
| 8 | June 24, 2021 | **DEETER** | Telephonic and text message conversation in which **DEETER** directed UCC 1 to pick up methamphetamine for redistribution |
| 9 | June 30, 2021 | **DEETER** | Text message discussion about UCC 1 selling methamphetamine for **DEETER** |

| COUNT | DATE | DEFENDANTS | DESCRIPTION |
|---|---|---|---|
| 10 | July 2, 2021 | **DEETER** | **DEETER** sent UCC 1 a text message about their drug trafficking "partnership." |
| 11 | July 2, 2021 | **DEETER** | **DEETER** arranged for UCC 1 to pick up methamphetamine for redistribution |
| 12 | July 5, 2021 | **DEETER** | **DEETER** directed UCC 1 to purchase a firearm with money obtained from the distribution of methamphetamine |
| 13 | July 5, 2021 | **DEETER** | **DEETER** asked UCC 1 to help him find someone to shave the heads and eyebrows of two women who owed him money |
| 14 | July 11, 2021 | **DEETER** | **DEETER** arranged for UCC 1 to pick up methamphetamine for redistribution |
| 15 | July 26, 2021 | **DEETER** | **DEETER** asked UCC 1 to get money to pay **DEETER's** methamphetamine source of supply |
| 16 | August 25, 2021 | **DEETER** and **STEELE** | Discussion of methamphetamine distribution. **DEETER** asked **STEELE** to use Cash App to pay him |
| 17 | August 29, 2021 | **DEETER** and **COX** | Discussion of money **DEETER** owes |
| 18 | September 1, 2021 | **DEETER** and **STEELE** | Discussion of methamphetamine prices |

| COUNT | DATE | DEFENDANTS | DESCRIPTION |
|---|---|---|---|
| 19 | September 1, 2021 | **DEETER** | Discussion about getting **BOLING** out of jail |
| 20 | September 3, 2021 | **DEETER** | **DEETER** directed a customer to contact **PEARSON** to purchase methamphetamine |
| 21 | October 8, 2021 | **DEETER** | Quoting a price for an ounce of methamphetamine and a quarter pound of methamphetamine |
| 22 | October 8, 2021 | **DEETER** | Quoting a price for an ounce of methamphetamine and a quarter pound of methamphetamine in Tulsa |
| 23 | October 8, 2021 | **DEETER** | Quoting a cash price for a quarter pound of methamphetamine and an ounce of methamphetamine |
| 24 | October 8, 2021 | **DEETER** | Quoting a price for an ounce of methamphetamine and a quarter pound of methamphetamine |
| 25 | October 8, 2021 | **DEETER** | Quoting a price for a quarter pound of methamphetamine. |
| 26 | October 8, 2021 | **DEETER** | Stating that **DEETER** needed $12,000 |
| 27 | October 10, 2021 | **DEETER** | Discussing the DEA raiding a drug house |
| 28 | October 18, 2021 | **DEETER** | **DEETER** arranged for UCC 3 to pick up methamphetamine from **PEARSON** for redistribution |

| COUNT | DATE | DEFENDANTS | DESCRIPTION |
|:---:|:---:|:---:|:---|
| 29 | November 17, 2021 | **DEETER** | **DEETER** asked UCC 2 to find someone who could pilot a drone |
| 30 | November 23, 2021 | **PEARSON** | Discussion about bond and deleting **PEARSON's** cellular telephone |
| 31 | December 17, 2021 | **DEETER** | Discussion of what to do to someone who stole drugs and money |
| 32 | December 19, 2021 | **DEETER** | A list of people owing money |
| 33 | December 21, 2021 | **DEETER** | Discussion of money |
| 34 | December 21, 2021 | **DEETER** | A list of people owing money |
| 35 | December 21, 2021 | **DEETER** | List of quantities of drugs, names, and amounts of money |
| 36 | December 21, 2021 | **DEETER** | Balance sheet containing names and amounts of money |
| 37 | December 21, 2021 | **DEETER** | List of names and amounts of money owed |
| 38 | January 2, 2022 | **DEETER** | Discussion of law enforcement investigating drug activities |
| 39 | January 2, 2022 | **DEETER** | Offer to sell bulk-quantities of methamphetamine |

All in violation of Title 21, United States Code, Sections 843(b) and 843(d)(1).

## COUNT FORTY
**[18 U.S.C. §§ 924(c)(1)(A)(i) and 2]**

On or about July 29, 2021, in the Northern District of Oklahoma, the defendant,

**RICHARD DALE DEETER, JR.**, aided and abetted by a person known to the

Grand Jury as Unindicted Co-Conspirator 1, knowingly possessed a Lorcin, Model

L380, .380 caliber pistol, serial number 321453, during and in relation to a drug

trafficking crime for which he may be prosecuted in a court of the United States, that

is, Drug Conspiracy, as set forth more fully in Count Six of this Indictment.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.

## COUNT FORTY-ONE
### [21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii)]

On or about December 1, 2021, in the Northern District of Oklahoma, the

defendant, **JOHNNY WESLEY SPARKS**, a/k/a "J5," knowingly and intentionally

possessed with the intent to distribute 500 grams or more of a mixture and substance

containing a detectable amount of methamphetamine, a Schedule II controlled

substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and

841(b)(l)(A)(viii).

## COUNT FORTY-TWO
### [18 U.S.C. §§ 924(c)(1)(A)(i) and 2]

On or about December 29, 2021, in the Northern District of Oklahoma, the

defendant, **RICHARD DALE DEETER, JR.**, aided and abetted by a person known

to the Grand Jury as Unindicted Co-Conspirator 3, knowingly possessed the

following firearms in furtherance of a drug trafficking crime for which he may be

prosecuted in a court of the United States, that is, Drug Conspiracy, as set forth more

fully in Count Six of this Indictment:

      1.     A Glock 19, 9x19 caliber semiautomatic pistol, serial number BMUB511; and

      2.     A Bryco Arms (Jennings), Bryco 59, 9mm semiautomatic pistol, serial number 788822.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.

## COUNT FORTY-THREE
### [21 U.S.C. §§ 856(a)(1) and 856(b)]

From in or about September 2021 to in or about October 2021, in the Northern District of Oklahoma, the defendants, **RICHARD DALE DEETER, JR.,** **IZABELLA MARIE BOLING**, a/k/a "Turbo," and others known and unknown, unlawfully and knowingly used and maintained a place located at 1815 North Atlanta Place, Tulsa, Oklahoma, for the purpose of storing and distributing methamphetamine, a Schedule II controlled substance.

All in violation of Title 21, United States Code, Sections 856(a)(1) and 856(b).

## FORFEITURE ALLEGATION
### [18 U.S.C. § 924(d), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c)]

The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 924(d), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461(c).

Upon conviction of the offenses alleged in this Indictment, as a part of their sentences, the defendants, **RICHARD DALE DEETER, JR., DONALD B. PEARSON, JONNA ELISA STEELE, JOHNNY WESLEY SPARKS**, a/k/a "J5," **IZABELLA MARIE BOLING**, a/k/a "Turbo," **NICOLE COX**, a/k/a "Nicole Michelle Jenner," a/k/a "Nicole Michelle Cox," a/k/a "Nicole Patterson," shall forfeit to the United States any property constituting, or derived from, or traceable to, the proceeds obtained, directly or indirectly, as a result of such violations, any firearms and ammunition involved in or used in the knowing commission of such offenses, and any property, real or personal, that was used or intended to be used to commit or to facilitate the violation of federal law.

All pursuant to Title 18, United States Code, Section 924(d), Title 21, United

States Code, Section 853 and Title 28, United States Code, Section 2461(c).


CLINTON J. JOHNSON                              A TRUE BILL
United States Attorney


_____              _/s/ Grand Jury Foreperson_____
DAVID A. NASAR                                 Grand Jury Foreperson
Assistant United States Attorney