IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **United States of America,**     ) | |
|         Plaintiff,     ) | |
| vs.     ) | Case No.   22-CR-115-JFH |
|     ) | |
| **Richard Dale Deeter, Jr.**     ) | |
|         Defendant     ) | |

### Defendant Richard Dale Deeter, Jr's[1]
### Motion to Compel Production of Information Regarding Informants

Mr. Deeter hereby moves the Court to enter an Order directing the United States of America to disclose to him and provide him copies of the following items:

1) Any and all HSI forms analogous to DEA forms 202 or 512 pertaining to Unindicted Co-Conspirators 1-5. These are commonly known as "informant establishment reports" or "confidential source establishment reports" and they serve to document that an individual has become an informant or "confidential source" ;

2) copies of any and all HSI forms analogous to DEA "case initiation reports" that were generated in whole or in part by information supplied to the HSI by Unindicted Co-Conspirators 1-5 (these reports document cases started as a result of information supplied by an informant or "confidential source");

3) debriefing reports regarding communications from Unindicted Co-Conspirators 1-5 to

---

[1] The parties have conferred in good faith on this issue, and an agreement will hopefully ensue. The undersigned filed this Motion out of an abundance of caution as the day of this filing was the motion deadline in this case and an arrangement had yet to be made.

1

HSI (to the extent not already produced) that are not denominated as HSI ROI's;

4) any statements made by Co-Conspirators 1-5 to the HSI, whether denominated as ROI's or not (whether relevant to prosecuting Defendants in this case, or not);

5) any and all administrative correspondence pertaining to Defendant Unindicted Co-Conspirators 1-**5** including:

    (a) documents relating to any deactivations for unsatisfactory behavior;

    (b) correspondence between HSI and the United States Attorney's office concerning continued use Unindicted Co-Conspirators 1-5 as informants after concerns came to light about any of them allegedly having committed any serious criminal offenses while an informant;

    (c) and any correspondence by and between the U.S. Attorney's office regarding the decision to prosecute Unidicted Co-Conspirators 1-5;

    (d) any analyses conducted regarding eligibility of Unindicted Co-Conspirators 1-5 for participation in the Witness Protection Program;

    (e) any analyses conducted regarding Unindicted Co-Conspirators 1-5 as individuals who warrant some measure of protection falling short of inclusion in the witness protection program (such as relocation or financial assistance short of relocation );

6) any deactivation reports (typically done as an ROI);

7) any HSI forms analogous to DEA 356's (records of payments made to Unindicted Co-Conspirators 1-5);

8) any HSI forms analogous to DEA 105's done on Unindicted Co-Conspirators 1-5

(concerning their criminal histories).

The dealings of Unindicted Co-Conspirators 1-5 with the HSI are obviously relevant to their credibility.

### The Sixth Amendment

The Sixth Amendment guarantees Mr. Deeter the right to put on a defense:

"We have previously stated that 'the Constitution guarantees defendants 'a meaningful opportunity to present a complete defense.'"

Gilmore v. Taylor, 508 U.S. 333, 343 (1993)(citations omitted);

"The right of an accused in a criminal trial to due process is, in essence, the right to defend against the State's accusations."

Chambers v. Mississippi, 419 U.S. 284, 294 (1973);

"A person's right to ...an opportunity to be heard in his defense- a right to his day in court- are basic in our system of jurisprudence."

In Re Oliver, 333 U.S. 257, 273 (1948).

Included in that right is the right to cross-examination:

"[the]...right of cross-examination is included in the right of an accused in a criminal case to confront witnesses against him secured by the Sixth Amendment."

Bruton v. U.S., 391 U.S. 123, 126 (1968);

"...the rights of confrontation and cross-examination are among fundamental requirements of a fair trial."

Parker v. Gladden, 385 U.S. 363, 365 (1966).

Cross-examination includes the right to impeach:

"...the cross-examiner is not only permitted to delve into the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit the witness..."

Davis v. Alaska, 415 U.S. 308, 316 (1974).

Impeachment is so important because the degree to which the members of a jury believe a witness is often conclusive on the trial's result:

"The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence."

Napue v. Illinois, 360 U.S. 264, 269 (1959).

For that reason, credibility is always relevant:

"...credibility is always an issue of consequence...testimony which aids the jury's determination of a (witness's) credibility and veracity (is always relevant)"

U.S. v. Quinto, 582 F.2d 224, 233 (2d Cir. 1978)(citation omitted);

"In *Davis v. Alaska*, we observed that, subject to 'the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation ..., the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit, the witness.' *Id*., at 316, 94 S.Ct., at 1110. **We emphasized that 'the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination**.' *Id*., at 316-317, 94 S.Ct. at 1110, citing *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959). Recently, in *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), we reaffirmed *Davis*, and held that 'a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' " 475 U.S., at 680, 106 S.Ct., at 1436, quoting *Davis*, *supra*, 415 U.S., at 318, 94 S.Ct., at 1111."

Olden v. Kentucky, 488 U.S. 227, 231 (1988)(emphasis added).

Of particular important are the scope of agreements between the DEA and Unindicted Co-Conspirators 1-5 and their courses of dealing with the DEA.

Documents demonstrating the number of times Unindicted Co-Conspirators supplied the

DEA with information, the content of the information, the usefulness of that information to the DEA, the number of investigations commenced with the help of Unindicted Co-Conspirators 1-5, the number of investigations that could have been launched as a result of information from them, but which the DEA decided not to pursue, the number of investigations compromised by their activities (authorized and unauthorized) and the number of times the parties may have ratified violations of their agreement bear directly on the credibility of Unindicted Co-Conspirators 1-5, and their motivations for testifying.

Respectfully submitted,

s/Fred Randolph Lynn
Fred Randolph Lynn, OBA #15296
907 South Detroit Avenue
Suite 1330
Tulsa, Oklahoma 74120-4205
(918) 693-8299
(918) 392-7936 (facsimile)
fredrandoplphlynn@gmail.com

Attorney for Mr. Deeter

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of December, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System, which will then send a notification of such filing (NEF) to all counsel of record registered with the CM/ECF system.

s/Fred Randolph Lynn