**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **United States of America,** | **)** | |
| **Plaintiff,** | **)** | |
| **vs.** | **)** | **Case Nos. 22-CR-115-JFH** |
| | **)** | |
| **Richard Dale Deeter, Jr.** | **)** | |

**Defendant Richard Dale Deeter, Jr's**
**Opposed Motion for Production of Brady Material**
**or, in the Alternative, *In Camera* Review of Such Material and Brief in Support**[1]

Defendant Richard Dale Deeter, Jr. (hereinafter referred to as "Mr. Deeter") hereby moves the Court for an Order directing production of certain Brady material, or, in the alternative, *in camera* review of such material.

For the reasons set forth more fully below, the Court is asked to either compel production of Detective Jeffrey Gatwood's internal affairs file with the Tulsa, Oklahoma Police Department, to Mr. Deeter (subject to an appropriate protective order), or order such material produced to the Court for *in camera* review.

A Brief in support of this Motion is set forth below.

**Introduction**

The documents sought bear on Mr.Gatwood's credibility: his internal affairs file may well contain evidence that impeaches his credibility.

**Brady**

Brady v. Maryland, 373 U.S. 83 (1963), which is and has been the law of the land for

---

[1]Concurrence was refused. The Government indicates that it will not produce the material requested. Additionally, the parties have conferred in good faith and been unable to resolve this dispuute.

more than five decades, held that a prosecutorial authority, when asked, must disclose to a Defendant information that is material either to the determination of guilt, innocence or punishment:

> "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

Brady, 373 U.S. at 87.

Two decades later the Supreme Court made crystal-clear that impeachment material qualifies as such evidence, and thus must be produced as well:

> "'Impeachment evidence....is 'evidence favorable to the accused' and falls 'within the *Brady* rule.'"

U.S. v. Bagley, 473 U.S. 667, 676 (1984). That is, and has been, the law of the land for more than twenty-five years.

## ***Brady* and Police Department Internal Files**

That rule applies to the internal files of police departments:

> "We agree 'that there may indeed be situations in which evidence from…internal investigations will bear heavily on the credibility of a testifying police officer...'"

U.S. v. Fuentez, 231 F.3d 700, 705 (10th Cir. 2000) (*citing* U.S. v. Johnson, 968 F.2d 765, 767 (8th Cir. 1992)). There is **no** recognized evidentiary privilege against disclosure of such files. *See* In Re Jury Grand Jury Subpoenas December 7 and 8, Issued to Bob Stover, Chief of the Albuquerque Police Department v. U.S., 40 F.3d 1096 (10th Cir. 1994).

To be even more precise, not only are such files discoverable, their contents, when they

bear on the subject officer's character for truthfulness or untruthfulness, are admissible as well: U.S. v. Nelson, 365 F.Supp.2d 381 (S.D. N.Y. 2005).

In Nelson, the Government sought to preclude a Defendant from cross-examining a police officer about an internal affairs investigation which concluded that his testimony in the internal affairs investigation was not credible. The court denied the Government's motion on that point, noting the Brady-inspired Constitutional considerations set forth above:

> "Moreover, given the Court's view that Commissioner Sarner's finding is in fact probative of Rodriguez's credibility, prohibiting inquiry into that finding on cross-examination would render ineffective the requirement that the Government disclose the finding to the defendant pursuant to *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 91972). *Giglio* held that, where 'reliability of a given witness may…be determinative of guilt or innocence,' the government must disclose any 'evidence affecting [that witness's] credibility.' Id. at 154 (quoting *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1957)). In light of the fact that Commissioner Sarner's finding is quintessential *Giglio* material, a ruling that, once produced, the defense could not use this material would be in tension with the requirement that the Government disclose it. Viewing all of these considerations in the context of the presumption in favor of admissibility as well as the heightened importance of the right to confront witnesses as a protection for criminal defendants, the Court finds that Nelson may, in cross-examining Rodriguez, inquire into Commissioner Sarner's finding regarding Rodriguez's credibility."

Nelson, 365 F.Supp. 2d at 391.

The Nelson court noted principles that strongly favored admission:

> "'…wide latitude should be allowed…when a government witness in a criminal case is being cross-examined by the defendant, and the trial judge's discretion 'cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony…" and that " Where evidence of witness character is offered by a defendant in a criminal proceeding, the policy of promoting accurate fact finding may have constitutional underpinnings.' In addition, the Federal Rules of Evidence generally favor admission of evidence, such that 'if there is a doubt about the existence of unfair prejudice, confusion of the issues, misleading, undue

> delay, or waste of time, it is generally better practice to admit the evidence, taking necessary precautions by way of contemporaneous instructions to the jury followed by additional admonitions in the charge."

Nelson, 365 F.Supp.2d at 386-387, citing U.S. v. Pedroza, 750 F.2d 187, 195-196 (2d Cir. 1984); Gordon v. U.S., 344 U.S. 414, 423 (1953) ; Wright & Miller, § 6118 and Weinstein &Berger, § 403.02[2][c].

It bears noting that the Court is not being asked to rule on the admissibility of those files in general or anything in particular in those files at this point. The Court is only asked to order their production, for review, in order to determine the usefulness of impeachment material therein.

While, at bottom, Mr. Deeter will settle for the *in camera* review contemplated by some of the case law set forth above, it should be noted for the record that he prefers production directly to counsel, albeit with a proper protective order. That is for two reasons- first, the Court has enough to do; and second, the Court, despite its expertise (really, because of it, as a manifestation of objectivity and neutrality), might not attribute to the subject material the same value an advocate would attribute to it:

> "...the Court reserved decision on the question whether *in camera* inspection by the trial judge is an appropriate or satisfactory measure when there is a showing of a 'particularized need' for disclosure. 360 U.S., at 400, 79 S.Ct., at 1241. This procedure, followed by production to defense counsel in the event the trial judge finds inconsistencies, has been adopted in some of the Courts of Appeals. In the Second Circuit it is available as a matter of right. While this practice may be useful in enabling the trial court to rule on a defense motion for production to it of grand jury testimony-and we do not disapprove it for that purpose-it by no means disposes of the matter. Trial judges ought not to be burdened with the task or the responsibility of examining sometimes voluminous grand jury testimony in order to ascertain inconsistencies with trial testimony. In any event, 'it will be extremely difficult for even the most able and experienced trial judge under the pressures of conducting a trial to pick out all of the

> grand jury testimony that would be useful in impeaching a witness.' *Pittsburgh Plate Glass*, 360 U.S., at 410, 79 S.Ct., at 1246 (dissenting opinion). Nor is it realistic to assume that the trial court's judgment as to the utility of material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate. The trial judge's function in this respect is limited to deciding whether a case has been made for production, and to supervise the process: for example, to cause the elimination of extraneous matter and to rule upon applications by the Government for protective orders in unusual situations, such as those involving the Nation's security or clearcut dangers to individuals who are identified by the testimony produced....."

Dennis v. U.S, 384 U.S. 855, 874-75 (1966).

**Conclusion**

Mr. Gatwood is likely to be a witness against Mr. Deeter at trial. Mr. Deeter has a Constitutional right under the Sixth Amendment to subject the Govermnent's case - - all of it, at every stage - - to "...meaningful adversarial testing..." U.S. v. Cronic, 466 U.S. 648, 659 (1984). That right includes the ability to **effectively** cross-examine the witnesses against him, and nothing is more central to that than the guarantees set forth in Brady and Bagley to impeachment evidence.

Respectfully submitted,

S/Randy Lynn
Fred Randolph Lynn OBA # 15296
907 South Detroit Avenue
Suite 1330
Tulsa, Oklahoma 74120-4305
(918) 693-8299
fredrandolphlynn@gmail.com

Attorney for Mr. Deeter

**Proof of Service**

I hereby certify that on this 22d day of December 2022, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) all counsel of record registered with the CM/ECF system.

S/ Randy Lynn